# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

**THE OUTDOOR CHANNEL, INC.,**
a Nevada Corporation

**Plaintiff,**

Case No. 4:10-CV-00030-JHP-PJC

v.

**JURY TRIAL DEMANDED**

**PERFORMANCE ONE MEDIA,**
**L.L.C. d/b/a IN COUNTRY**
**TELEVISION,** a New York
Limited Liability Company;  and

**ROBERT J. SIGG,** an individual

   **Defendants.**

### DEFENDANTS PERFORMANCE ONE MEDIA, L.L.C., D/B/A IN COUNTRY TELEVISION AND ROBERT J. SIGG'S OPPOSED MOTION TO STAY NON-JURISDICTIONAL DISCOVERY AND MOTION FOR PROTECTION PURSUANT TO FRCP 26(C)

Defendants Performance One Media, L.L.C., d/b/a In Country Television and Robert J. Sigg (collectively "Defendants"), by and through counsel, hereby file this Motion to Stay Non-Jurisdictional Discovery and Motion for Protection Pursuant to FRCP 26(c) ("Motion"). In support of this Motion, Defendants respectfully state the following:

### I.     PRELIMINARY STATEMENT

1.     Plaintiff's lawsuit is a trademark lawsuit.  However, Plaintiff's trademark claims are tenuous in nature and the discovery it has propounded on Defendants is a gambit to harass a business competitor and obtain confidential and sensitive competitive intelligence.  As the Court will see, Plaintiff is using the discovery process to ferret out its competitor's confidential business information.

Disclosure of this information would provide Plaintiff with an unfair competitive advantage in the subscription satellite television programming industry and would harm Defendants' current business relationships.

2.      There are four alleged trademarks at issue in this case: (1) The Outdoor Channel; (2) Outdoor Channel; (3) Bring the Outdoors Home; and (4) The Wingshooter.  The alleged infringing conduct by Defendants consisted of using (1) the tagline "In Country Bringing the Outdoors Home," on a website, (2) airing a program created by a third-party on its channel "In Country Television" entitled "Wingshooting USA," (3) airing a program created by a third-party on its channel "In Country Television" entitled Outdoor TV; and (4) combining a stylized mountain design with the words "In Country Television."

3.      As an initial matter, Plaintiff admits that Defendants are no longer allegedly infringing on its mark Bring the Outdoors Home.  (Pl. Am. Cmpt. Dkt. No. 9, ¶ 20).  Moreover, on August 31, 2010, the United States Patent and Trademark Office granted Defendant Sigg a trademark for its mark which combines the slogan "In Country TV" with a stylized mountain design.  Attached hereto as Exhibit 1 is a true and correct copy of the PTO's certification of the mark.  Furthermore, the trademark for "Wingshooting USA" has been registered by National Shooting Sports Foundation, Inc. since 2006.  A true and correct copy of the PTO registry is attached as Exhibit 2.  Finally, Defendants are no longer airing a program entitled "Outdoor TV."  Without agreeing to Plaintiff's claim that Defendants were allegedly infringing on Plaintiff's alleged trademark, Defendants, to help resolve the dispute, requested that the programmer change the program's name.  The programmer changed the name for Outdoor TV to "Artic Cat Outdoor."

4.      Therefore, what is left of Plaintiff's trademark claims is unclear.  At the very least, the scope of this lawsuit has been substantially narrowed.  However, Plaintiff's discovery requests are

broad.[1]  Plaintiff is using the judicial system and process to go on a fishing expedition for proprietary and confidential information from one of its competitors—Defendant In Country Television and its President Robb Sigg.

5. Because the Defendants have filed a meritorious Rule 12(b)(2) motion (Dkt No. 22), the Court should stay all the non-jurisdictional discovery propounded by Plaintiff until it rules on the motion, which should be shortly after September 23, 2010.  Defendants file this Motion for Protection out an abundance of caution because the discovery requests propounded on Defendants largely concern non-jurisdictional issues.

6. For example, one request demands: "Produce all documents concerning the planning or contemplation of Your business strategy(ies) since January 1, 2006." (Pl. Second Req. Sigg No. 37 & Pl. Second Req. Performance One No. 55).  It is puzzling that Plaintiff believes it is entitled to such a broad range of materials, especially considering that Plaintiff alleges that the conduct forming the basis of its complaint did not commence until June 2009.  It is equally puzzling that Plaintiff believes it is entitled to "all documents relating to, referring to, or constituting income received by You, since January 1, 2006, from advertising, or otherwise, whether such income is related to television, to Your website activities or to any other of Your activities." (Pl. Second Req. Sigg No. 36 & Pl. Second Req. Performance One No. 54).  In other words, Plaintiff believes it is relevant to its tenuous trademark claims for it to know any source of income for Defendants in the past five years.  The breadth of Plaintiff's Requests are not commensurate with the issues in this suit.

---

[1] By this motion, Defendants are seeking protection from non-jurisdictional discovery.  Defendants are not waiving their other, substantive objections to the individual requests as presently worded. There are numerous problems with Plaintiff's requests: many of the requests are (1) overly broad, (2) irrelevant, (3) seek materials protected by the attorney-client privilege and/or work-product doctrine, (4) seek confidential business information, and (5) serve only to harass Defendants.

7. Additionally, one Request to Defendant Sigg asks for "all police records, arrest records, or other court documents" related to prior cases Defendant Sigg has been involved in. (Pl. First Req. Sigg No. 28). It is difficult to determine how this information could be relevant to the trademark issues in this case.[2] Instead, it is part of Plaintiff's attempt to use the judicial system to brow-beat and humiliate a business competitor. Plaintiff's ploy is further highlighted when it demands information relating to Buckventures (which Defendants no longer do business with), a rival television program to Plaintiff's programming. (Pl. First Req. Sigg No. 26 & Pl. First Req. Performance One No. 45). This is just the tip of the iceberg: Plaintiff has propounded nearly 100 requests on Defendants, of which only roughly ten percent relate to jurisdiction, and many of which are facially irrelevant.

8. Given the highly competitive nature of the subscription television market, many, if not most, of the discovery requests amount to an impermissible attempt to divine the specific business terms and arrangements Defendants have made with third parties in the industry or Defendants' own confidential business information. Plaintiff, who is in direct competition with Defendants, is simply using this lawsuit, and the discovery process, to discover the inner-workings of Defendants' business and it relationship with other players in the subscription television market. Many, if not most, of the Requests are flatly irrelevant to the issues in this lawsuit. Furthermore, given that two of its alleged trademarks are owned by other parties, Plaintiff's lawsuit appears to have some serious Rule 11 issues.

---

[2] Plaintiff has also noticed a deposition of one of Defendants' representatives. Attached as Exhibit 3 is a true and correct copy of the Notice. While the issues largely relate to jurisdiction, Defendants object to and ask for protection from to the extent any of the issues touch on non-jurisdictional activities and/or knowledge. *See infra*, p. 14. Moreover, Defendants note that Plaintiff did not provide sufficient notice and have offered to hold the deposition on September 20, 2010.

## II.     BACKGROUND

9. On January 15, 2010, Plaintiff initiated this suit by filing its Original Complaint. (Dkt. No. 2). On February 4, 2010, Plaintiff filed its Amended Complaint. (Dkt. No. 9).

10. On May 4, 2010, Defendants filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2) ("12(b)(2) Motion"). (Dkt. No. 22). On June 9, 2010, Plaintiff filed its Response to Defendants' 12(b)(2) Motion. (Dkt. No. 27). On June 23, 2010, Defendants filed their Reply. (Dkt. No. 39).

11. On July 2, 2010, Plaintiff filed its Opposed Motion to Stay Decision with Respect to Defendants'12(b)(2) Motion. (Dkt. No. 41).

12. On July 2, 2010, Plaintiff propounded on each Defendant a First Request for Production of Documents. On Defendant Sigg it propounded twenty-eight (28) Requests. On Defendant Performance One Media it propounded forty-six (46) Requests. All the Requests for Production, with the exception of one Request per respective Defendant, are merits based.

13. On July 23, 2010, the Court issued a minute order staying its ruling on Defendants' 12(b)(2) Motion in order to allow for sixty (60) days of discovery on the issue of jurisdiction. (Dkt. No. 50).

14. On August 9, 2010, Plaintiff propounded additional discovery on each Defendant. The Second Set of Requests for Production included eleven (11) additional inquiries to each Defendant, respectively. Each of the additional eleven inquiries propounded to each Defendant are identical. Only four (4) of the eleven additional inquiries relate to personal jurisdiction.

15. The parties have conferred regarding this issues set forth in this Motion to Stay Non-Jurisdictional Discovery and Motion for Protection Pursuant to FRCP 26(C) and were unable to come to an agreement. Plaintiff does oppose this motion.

5

### III.     ARGUMENT AND AUTHORITIES

**A.     The Defendants' Motion for Protection Should be Granted to Prevent Plaintiff From Using the Sixty Days to go on a Fishing Expedition for General Discovery**

16.     Defendants file this Motion in order to ensure that Plaintiff does not attempt to circumvent the Court's Order that discovery be limited to the issue of jurisdiction. A Court may allow jurisdictional discovery to proceed when a motion challenging personal jurisdiction is at issue. *Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir. 2002). That is the case here. The Court issued a minute order allowing discovery on the issue of jurisdiction. (Dkt. No. 50).

17.     Under FRCP 26(c), a court may limit the scope of discovery to dispositive or determinative issues and to preclude undue burdensome and harassing discovery. FRCP 26(c); *Howard v. Los Animas County Sheriff's Office*, 2009 WL 3536655, at *1 (D. Colo. 2009) (finding stay of discovery appropriate); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 285-86 (S.D. Cal. 2000) (holding that FRCP 26(c) is used to impose conditions on discovery in order to prevent injury, harassment, oppression or undue burden and expense) (citation omitted).

18.     "A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citation omitted); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'r, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved."); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."); *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003) (a stay is appropriate if resolution of a preliminary motion may dispose of the entire action); 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE

6

§ 2040, at 521-22 (2d ed. 1994) (pursuant to FRCP 26(c), "when one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided").

19.     Indeed, there are many circumstances where courts may limit discovery until a dispositive issue has been resolved. *See, e.g., Behrens v. Pelletier*, 516 U.S. 299, 308-310 (1996) (noting that discovery can be particularly disruptive when a dispositive motion regarding immunity is pending); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992) (holding same); *Gilbert v. Ferry*, 401 F.3d 411, 415-16 (6th Cir. 2005) (finding stay permissible pending ruling on dispositive motion involving jurisdictional issue); *Enplaner, Inc. v. Marsh*, 11 F.3d 1284, 1291 (5th Cir. 1994) (holding same).

20.     One such circumstance where courts have the discretion to limit the scope of discovery is a motion to dismiss based upon lack of personal jurisdiction. In *Ajjrapu v. AE Biofuels, Inc.*, the Court granted a stay of discovery where a defendant had filed a motion pursuant to FRCP 12(b)(2). Slip Copy, 2010 WL 1529596, at *1-2 (D. Colo. April 15, 2010). The Court held that subjecting a party to discovery when a motion to dismiss based on a lack of personal jurisdictional is pending would subject that party to undue burden or expense if the motion to dismiss is later granted. *Id*.

21.     Similarly, in *Brady v. XE Services LLC*, the court allowed discovery on the sole issue of whether an individual defendant's contacts with the forum state were sufficient to establish jurisdiction over him. Slip Copy, 2010 WL 2711395, at *2 (E.D.N.C. July 7, 2010). The court admonished the plaintiff, who was attempting to conduct depositions of the corporate defendants, that "the scope of jurisdictional discovery is limited to determining whether this Court has personal

jurisdiction over Defendant Ridgeway . . . and will not be used as a fishing expedition for general discovery." *Id*.

22.     Defendants have filed this Motion pursuant to FRCP 26(c) out of an abundance of caution in order to ensure that Plaintiff will not attempt to utilize the sixty days given it for jurisdictional discovery to ferret out unwarranted substantive discovery. *Id*.

23.     In two separate documents, Plaintiff has propounded on Defendant Sigg forty (40) total Requests for Production. Only five (5) relate to personal jurisdiction. In Plaintiff's First Request for Production, Nos. 1, 2, 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 25 are all explicitly related to Plaintiff's trademark claims. No. 4 is a "catch-all" Request. No. 21 relates to expert opinions. Nos. 22, 23, 24 and 26 relate to contracts between Defendant Sigg and various entities, none of which are located or incorporated in Oklahoma. No. 28 asks for superfluous information regarding Defendant Sigg's past conduct, none of which touches upon this Court's personal jurisdiction over him. Attached as Exhibit 4 is a true and correct copy of Plaintiff's First Request for Production of Documents on Defendant Sigg.

24.     In the second set of Requests, No. 29 explicitly relates to Plaintiff's trademark claims. Nos. 30 and 36 relate to Defendant Sigg's marketing and advertising and any income from such. No. 31 relates "to any and all communications" between Defendant Sigg and Plaintiff. No. 34 is impossible to answer because it references "the preceding request No. 50" (there are only forty total Requests to Defendant Sigg). No. 35 relates to Defendant Sigg's contracts and correspondence with entities such as DISH Network, a Nevada corporation headquartered in Denver, Colorado, and DirecTV, a California corporation headquartered in Los Angeles, California. No. 37 requests "all documents concerning the planning or contemplation of [Defendant Sigg's] business strategies" since 2006. Finally, No. 38 requests all documents "which in any way relate or refer to Plaintiff." Attached

as Exhibit 5 is a true and correct copy of Plaintiff's Second Requests for Production of Documents on Defendant Sigg.

25. In sum, only Request Nos. 27, 32, 33, 39, and 40 relate to personal jurisdiction over Defendant Sigg. Of the other thirty-five (35) Requests—out of a total of forty (40)—none are likely to lead to discovery of relevant evidence on the issue of jurisdiction.

26. In two separate documents, Plaintiff has propounded a total of fifty-eight (58) Requests for Production on Defendant Performance One Media. Only six (6) relate to personal jurisdiction. In Plaintiff's First Request for Production , Nos. 3, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37 and 38 all explicitly relate to Plaintiff's trademark claims. Nos. 1, 2, and 4 are related to documentation surrounding Defendant Performance One Media's television channel and related advertising "distributed nationally." No. 39 relates to expert opinions. Nos. 40-45 relate to Defendant Performance One Media's contracts and correspondence with entities such as DISH Network, a Nevada corporation headquartered in Denver, Colorado, and DirecTV, a California corporation headquartered in Los Angeles, California. Attached as Exhibit 6 is a true and correct copy of Plaintiff's First Request for Production of Documents on Defendant Performance One Media.

27. In the second set of Requests, No. 47 explicitly relates to Plaintiff's trademark claims. Nos. 48 and 54 relate to Defendant Performance One Media's marketing and advertising and any income from such. No. 49 relates "to any and all communications" between Defendant Performance One Media and Plaintiff. No. 53 relates to Defendant Performance One Media's contracts and correspondence with entities such as DISH Network, a Nevada corporation headquartered in Denver, Colorado, and DirecTV, a California corporation headquartered in Los Angeles, California. No. 55 requests "all documents concerning the planning or contemplation of [Performance One Media's]

business strategies" since 2006.  Finally, No. 56 requests all documents "which in any way relate or refer to Plaintiff."  Attached as Exhibit 7 is a true and correct copy of Plaintiff's Second Requests for Production of Documents on Defendant Performance One Media.

28. In sum, only Request Nos. 46, 50-52, 57, and 58 relate to personal jurisdiction.  Only six (6) of the fifty-eight (58) Requests are likely to lead to discovery of relevant evidence on the issue of jurisdiction.

29. The lack of personal jurisdiction is a dispositive or determinative issue in this case.  The Court has ordered discovery to proceed on the issue of jurisdiction.  Therefore, Defendants move the Court to limit Plaintiff's discovery to the eleven (11) requests out of a total of ninety-eight (98) that involve the issue of jurisdiction.  *See Ajjrapu*, 2010 WL 1529596, at *1-2.  Accordingly, Defendants request that the Court explicitly limit discovery to Requests 27, 32, 33, 39, and 40 to Defendant Sigg and Requests Nos. 46, 50-52, 57, and 58 to Defendant Performance One Media.

**B.    The *Renda* Factors Weigh Heavily Toward Granting Defendants' Motion for Protection**

30. In the determination of whether to stay discovery while pending dispositive motions are decided, the trial court "inevitably must balance the harm produced by a delay in discovery against the possibility that [a dispositive] motion will be granted and entirely eliminate the need for such discovery."  *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997).  District courts in the Tenth Circuit utilize a five-prong test for determining whether a stay of discovery should be granted.  In *String Cheese Incident, LLC v. Stylus Shows, Inc.*, the court stated:

> When considering a stay of discovery, the court may consider and weigh: "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."

2006 WL 894955, at * 2 (D. Colo. 2006) (citing *FDIC v. Renda*, 1987 WL 348635, at *2 (D. Kan. 1987); *see also Ajjrapu*, 2010 WL 1529596, at *1-2 (citing *String Cheese Incident*).

31. The first *Renda* Factor weighs toward granting Defendants' Motion. Here there is no harm to Plaintiff that will result from a stay of discovery as to its substantive claims. The alleged infringing conduct by Defendants consisted of using (1) the tagline "In Country Bringing the Outdoors Home," accompanied by a stylized mountain design on its website, (2) airing a program created by a third-party on its channel "In Country Television" entitled "Wingshooting USA," (3) airing a program created by a third-party on its channel "In Country Television" entitled Outdoor TV, and (4) combining a stylized mountain design with the words "In Country Television."

32. Plaintiff admits that Defendants are no longer allegedly infringing on its mark Bring the Outdoors Home. (Pl. Am. Cmpt. ¶ 20). Moreover, on August 31, 2010, the United States Patent and Trademark Office granted Defendant Sigg a trademark for its mark which combines the slogan "In Country TV" with a stylized mountain design. (Exh. 1). Furthermore, the trademark for "Wingshooting USA" has been registered by National Shooting Sports Foundation, Inc. since 2006. (Exh. 2). Finally, Defendants are no longer airing a program entitled "Outdoor TV." Without agreeing to Plaintiff's claim that Defendants were allegedly infringing on Plaintiff's alleged trademark, Defendants, to help resolve the dispute, requested that the programmer change the program's name. The programmer changed the name for Outdoor TV to "Artic Cat Outdoor." Given the lack of alleged infringing conduct, there is no harm to Plaintiff in issuing a stay of general discovery. *Renda*, 1987 WL 348635, at *2.

33. The second *Renda* factor also cuts towards granting Defendants' Motion. The burden on Defendant to respond to merits-based discovery at this juncture would be significant. *String Cheese Incident*, 2006 WL 894955, at * 2 (citing second *Renda* factor). Plaintiff's discovery requests

11

are substantially concerned with its tenuous trademark allegations and other facially irrelevant requests. Only eleven (11) out of a total of ninety-eight (98) Requests touch on jurisdictional issues. More importantly, many of the Requests seek highly confidential and sensitive competitive intelligence. To force Defendants at this juncture to go through the expensive and time-consuming process of producing documents relevant to Plaintiff's trademark-based and other irrelevant requests would constitute a severe burden on Defendant. *See Maynard v. Colorado Supreme Court Office of Attorney Regulation Counsel*, Slip Copy, 2010 WL 231555, at *2 (D. Colo. Jan. 13, 2010) (noting that the court should determine jurisdictional issue before the parties engage in "expensive discovery").

34. The Plaintiff's have chosen to propound (98) ninety-eight discovery requests on Defendants, only (11) eleven of which relate to jurisdiction. Furthermore, many of Plaintiff's discovery requests are facially irrelevant and amount to a fishing expedition to discover confidential business information and gain a competitive advantage over a competitor. (Declaration of Robert Sigg) (attached at Exhibit 8 is a true and correct copy of Sigg's Declaration); *Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181, at *3 (N.D. Ill. 1998) ("[T]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery"); *Litton Indus., Inc. v. Chesapeake & Ohio Railway Co.*, 129 F.R.D. 528, 530 (E.D. Wis. 1990) (holding that information that would provide a competitor with an unfair advantage and harm current business relationships was confidential and not subject to disclosure).

35. Allowing Plaintiff to conduct merits-based discovery would likely result in motions practice and hearings related to Plaintiff's non-jurisdictional discovery. In less than sixty days, the jurisdictional issue will be answered. If Defendants' 12(b)(2) Motion is granted, no merits-based discovery will be needed.

36.     It is respectfully submitted that there is no inconvenience to the Court. *Renda*, 1987 WL 348635, at *2 (citing third *Renda* factor). In fact, a stay on substantive discovery is an efficient use of judicial resources. The Court ordered a stay of sixty days to conduct discovery on the issue of jurisdiction. That time period expires in less than two weeks and then the Court may rule on Defendants' 12(b)(2) motion. *Chavous*, 201 F.R.D. at 2 (D.D.C. 2001) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources"). In addition to general discovery being a burden on Defendants, it is an unnecessary waste of valuable judicial time and resources to proceed with general discovery until the dispositive issue of personal jurisdiction is resolved. *Ajjrapu*, 2010 WL 1529596, at *1-2; *see also Grosvenor v. Qwest Communications Int'l, Inc.*, Slip Copy, 2010 WL 1413108, at *2 (D. Colo. April 1, 2010) (reviewing third *Renda* factor and noting that "[t]he court's time is not well-served by being involved in possible discovery motions and other incidents of discovery . . . where, as here, a dispositive motion is pending").

37.     The fourth *Renda* Factor is not implicated in this case. *Renda*, 1987 WL 348635, at *2. There are no persons, not parties to this litigation, who have an interest in expediting the merits-based discovery process in this case. *Id*. Accordingly, this factor weighs toward granting Defendants' Motion.

38.     The fifth *Renda* Factor also weighs in favor of granting Defendants' Motion. The public has a significant interest in not being haled into a court where they lack the requisite contacts with the jurisdiction. Moreover, the public, as potential litigants, has an interest in not being forced to engage in the expensive and time-consuming general discovery process before the court decides the threshold issue of jurisdiction. *String Cheese Incident*, 2006 WL 894955, at * 2 (fifth *Renda* factor is

13

the public interest); *Maynard*, 2010 WL 231555, at *2. Accordingly, this factor weighs in favor of granting Defendants' Motion.[3]

## IV.   CONCLUSION

39.   Pursuant to FRCP 26(c) and the relevant case law, Defendants respectfully request the Court to limit the scope of discovery such that it conforms with its Order limiting discovery to the issue of jurisdiction. (Dkt. No. 50). Only eleven (11) of a total of ninety-eight (98) of Plaintiff's Requests for Production relate to discovery. Accordingly, Defendants request that the Court, in an order (1) explicitly limit discovery to Requests 27, 32, 33, 39, and 40 to Defendant Sigg, (2) explicitly limit discovery to Requests Nos. 46, 50-52, 57, and 58 to Defendant Performance One Media, and (3) explicitly limit the deposition to issues related to the Court's jurisdiction over Defendants.

**RESPECTFULLY SUBMITTED** this 9th day of Septeber, 2010.

>	*s/* Mary Elizabeth Nesser
>	Jason L. Glass, OBA No. 17635
>	Mary Elizabeth Nesser, OBA No. 22247
>	RICHARDS & CONNOR, P.L.L.P.
>	ParkCentre Building, 12th Floor
>	525 South Main Street
>	Tulsa, Oklahoma 74103-4509
>	Telephone: (918) 585-2394
>	Facsimile: (918) 585-1449
>	E-mail: mnesser@richardsconnor.com
>	ATTORNEYS FOR DEFENDANTS

---

[3] In *Lofton v. Bank of America Corp.*, the Court denied one of the defendants' motion to stay discovery pursuant to FRCP 26(c) where that defendant had also filed an FRCP 12(b)(2) motion. 2008 WL 2037606, at *1-2 (N.D. Cal. 2008). The court denied the FRCP 26(c) motion because it found that "plaintiff persuasively argues that he must have access to information that involves the merits of his suit." *Id*. at *2 (holding that plaintiff needed documents showing that defendants collaborated to charge plaintiff extra fees to prove up personal jurisdiction over one of the defendants and that these same allegations formed the basis of his substantive claims). This is not the case here. Plaintiff's substantive trademark allegations do not intersect or overlap with the threshold question of personal jurisdiction over Defendants. This is evidenced by Plaintiff's own cursory allegation that it brought suit in the Northern District of Oklahoma "because both parties offer their television services in this jurisdiction." (Pl. Am. Cmpt. ¶ 7).

## CERTIFICATE OF SERVICE

I hereby certify that on this the 9th day of September, 2010, I electronically transmitted **DEFENDANTS PERFORMANCE ONE MEDIA, L.L.C., D/B/A IN COUNTRY TELEVISION AND ROBERT J. SIGG'S MOTION TO STAY NON-JURISDICTIONAL DISCOVERY AND MOTION FOR PROTECTION PURSUANT TO FRCP 26(C)** to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Richard P. Hix, Esq.
Rachel Blue, Esq.
Sharolyn Whiting-Ralston, Esq.

*Attorneys for Plaintiff*

                                                                                                            s/ Mary Elizabeth Nesser