IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) THE OUTDOOR CHANNEL, INC.**, a Nevada Corporation | |
| **Plaintiff,** | |
| **v.** | Case No. 10-CV-30-JHP-PJC |
| **(1) PERFORMANCE ONE MEDIA, LLC d/b/a IN COUNTRY TELEVISION**, a New York Limited Liability Company; | |
| **(2) PERFORMANCE ONE MEDIA, LLC**, a New York Limited Liability Company; and | |
| **(3) ROBERT J. SIGG**, an individual, | |
| **Defendants.** | |

## APPLICATION TO STAY DECISION
## WITH RESPECT TO DEFENDANTS' 12(b)(2) MOTION

Plaintiff, The Outdoor Channel, Inc., hereby makes Application for a stay of decision with respect to defendants' pending Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and Brief in Support ["Motion to Dismiss"], until defendants have fully complied with Magistrate Cleary's Order of March 10, 2011 on Plaintiff's Motion to Compel [Doc. 106].[1]  By that Order, defendants are specifically required to produce jurisdictionally relevant evidence, which they have to date withheld, concerning their contacts with Oklahoma.[2]  This Application is for the purpose of completing the record concerning jurisdictional facts.

---

[1] Plaintiff contacted defendants regarding this motion, but have not been informed as to whether they are or are not opposed.

[2] The Order requires defendants to produce "(1) information/documents related to Defendants' contacts with and business activities directed at the State of Oklahoma." [Doc. 106.]

Plaintiff believes the record concerning defendants' Motion, as it presently exists, requires its denial. However, plaintiff is mindful of the need to make a complete record concerning jurisdiction, particularly in the event of any future appeal, and therefore, in an abundance of caution, files this Application.

1.)      On May 4, 2010, defendants filed their Motion to Dismiss [Doc. 22] claiming there were insufficient contacts between themselves and this State to warrant personal jurisdiction. As support, defendants filed nothing other than a two page Declaration from Robert Sigg, in which he tried to convince the Court that defendants had virtually no contacts with Oklahoma.

2.)      On June 9, 2010, plaintiff filed its Response to Defendants' Motion to Dismiss. [Doc. 27.] This Response was prepared without benefit of discovery, from publicly available sources. Plaintiff provided the Court with evidence of defendants' extensive contacts with Oklahoma through their interactive internet business, including but not limited, to a service provided by the ICTV website, by which defendants personally arrange, through local resources, to have ICTV hooked-up to any Oklahoma resident who requests it; a real estate function facilitating sale of Oklahoma property, by Oklahomans, to Oklahomans, and defendants' extensive television programming available throughout the state, transmitted on channels dedicated to In Country Television ["ICTV"]. Defendants' Motion also failed to disclose that they systematically display, in Oklahoma, through both television and the internet, the very infringing words and images that are the gravamen of this case. [*See,* Doc. 27.]

3.)      On June 22, 2010, defendants filed their Reply concerning their Motion to Dismiss [Doc. 39, hereinafter "Reply"]. In it, they made a series of assertions (without submitting any evidence in support). They attempted to create the impression that their

commercial activities in this State–particularly the presence of their dedicated television network, on DISH Network and DirecTV–has somehow occurred without defendants having caused it, or having profited from it. The Reply states: "[t]here is absolutely no evidence showing Defendants contracted with either DirecTV or DISH Network to purposefully broadcast programming into Oklahoma." [Reply, P. 6.] Defendants also contended that: "... Defendants did not control or direct the distribution of programming by DirecTV and/or DISH Network into this state." [Reply, P. 5.] They further claimed that Plaintiff had failed, with respect to the broadcast of Defendants' programming through Dish and Direct to "...show any evidence of this purported 'relationship' [between ICTV and DISH or Direc] or any other 'commercial relationships' that would warrant the exercise of personal jurisdiction." [Reply, P. 6.] Finally, again without any evidentiary showing, defendants attempted to contend that they enjoy no "revenue" or "business" from the broadcast of their programming in Oklahoma. [Reply, P. 6.] In this connection, defendants relied upon the fact that Plaintiff had not yet furnished the Court the specific contracts between ICTV, DISH, and Direc, and had not yet provided documents showing the specific financial advantages to defendants from their internet and television business in this State. [*See,* Reply.] Critically, as demonstrated below, despite the fact they have made these arguments in order to escape jurisdiction, defendants have refused to produce the DISH Network and DirecTV contracts, the documents which concern their negotiations and performance, or evidence of the financial benefits they have gained from the airing of their programming in this State.

4.)     On July 2, 2010, plaintiff filed an Application to Stay Decision With Respect to Defendants' 12(b)(2) Motion so that discovery may be had. [Doc. 41.]

5.)     On July 2, 2010, plaintiff also issued its first set of discovery requests to

defendants.

6.)    On July 12, 2010, defendants filed their Response to Application to Stay Decision [Doc. 45]. In it, they sought to escape discovery by requesting that the Court rule concerning personal jurisdiction without discovery. Knowing full well what discovery would show, defendants attempted to convince the Court that discovery concerning jurisdictional issues should not occur because there was nothing to discover.[3] Since then, the reason defendants have fought discovery tooth and nail has become transparent–defendants have simply misrepresented the facts concerning their commercial activities with Oklahoma. Plaintiff has submitted the evidence it has been able to obtain since that time to the Court. [*See*, Docs. 73, 79, and 87 with corresponding exhibits.]

7.)    On July 23, 2010, the Court, by Minute Order [Doc. 50], granted plaintiff's Application to Stay Decision.

8.)    On August 9, 2010, plaintiff served its second set of discovery requests to defendants.

9.)    On September 10, 2010, defendants filed their Opposed Motion to Stay Non-Jurisdictional Discovery and Motion for Protection Pursuant to FRCP 26(c) [Doc. 55]. Defendants served their initial Responses and Objections to the discovery requests on September 17, 2010. The objections included among other things, "relevance" and "confidentiality" (trade secrets). Defendants produced some documents but only subject to their objections.

---

[3] In this pleading the defendants stated: "…the Court already has all the requisite materials to determine whether there is personal jurisdiction over Defendants. Thus, Plaintiff's 'Application' for discovery is unwarranted." [Doc. 45, P. 2.] "Discovery should be denied on questions of personal jurisdiction in cases where the discovery sought could not add any significant facts." [*Id.*, P. 4.] "Here, discovery would serve no purpose and should not be permitted." [*Id.*] "…Defendants do not control or direct the distribution of programming by DirecTV and/or DISH Network into this state." [*Id.*, P. 5.] "There are no unresolved factual issues vis-à-vis personal jurisdiction such that the Court cannot rule on Defendants' Motion.…" [*Id.*]

10.)    The parties agreed upon and the Court entered a protective order providing for "confidential" and "attorneys' eyes only" designations on September 29, 2010. [Doc. 66.]

11.)    Defendants' Opposed Motion to Stay Non-Jurisdictional Discovery and Motion for Protection Pursuant to FRCP 26(c) was denied by the Court on October 5, 2010. [Doc. 71.] Yet, defendants continued to maintain their other objections and refused to further identify documents being withheld. Defendants did provide some additional documents, but still refused to produce multiple categories of items, including but not limited to the very DISHNetwork and DirecTV contracts they put into issue.

12.)    On October 19, 2010, new counsel entered an appearance for defendants. [Docs. 74, 75, and 76.] Accordingly, counsel for the parties met and discussed the issues, including the discovery issues with defense counsel promising prompt review and supplementation. After several weeks with no production, counsel again conferred.

13.)    On December 29 and 30, 2010, defendants served supplemental responses and objections to the discovery requests, but still did not provide supplemental documents. The supplemental responses maintained most of the same objections.

14.)    Accordingly, on January 14, 2011, plaintiff filed a motion to compel. [Doc. 85.] Defendants responded on February 10, 2011 [Doc. 94] and plaintiff replied on February 23, 2011 [Doc. 100].

15.)    After the hearing on the Motion to Compel on March 7, 2011, Magistrate Clearly verbally ordered defendants to produce, among other things, the DISHNetwork and DirecTV contracts.

16.)    On March 10, 2011, Magistrate Cleary issued a written order which encompassed his verbal order of March 7, 2011 and addressed remaining issues. [Doc. 106.] The Order,

which is attached hereto as Exhibit A, requires, among other things, immediate production of the DISHNetwork and DirecTV contracts and supplemental discovery responses within ten (10) days. Critically, the Order requires production of all jurisdictionally relevant materials. [*See, id.* (requiring production of "(1) information/documents related to Defendants' contacts with and business activities directed at the State of Oklahoma.").]

17.)   However, based on correspondence from defense counsel on March 9, 2011, plaintiff believes defendants intend to further delay discovery production by appealing or otherwise attempting to delay compliance with Magistrate Cleary's Order. [*See*, e-mail dated March 9, 2011 from Sarah Jane Gillett to Sharolyn Whiting-Ralston, attached as Ex. B.]

Plaintiff requested the responsive documents last summer so that it may properly provide the Court with all the appropriate information on both the jurisdictional issues and merits of the case. Yet, the plaintiff remains hamstrung by defendants' delay tactics—tactics which it appears they continue to maintain by appealing the clear Order of Magistrate Cleary to comply with discovery obligations. Plaintiff has continued to proceed with depositions and will complete other discovery as best as possible by the discovery deadline. However, plaintiff asks this Court to stay its decision on the Motion to Dismiss until defendants have fully complied with Magistrate Cleary's Order on the motion to compel, so that the jurisdictional record can be made complete.

Dated: March 11, 2011.

s/Sharolyn C. Whiting-Ralston
Richard P. Hix, OBA #4241
Rachel Blue, OBA #16789
Sharolyn C. Whiting-Ralston, OBA #21406
McAFEE & TAFT, P.C.
1717 South Boulder Ave., Suite 900
Tulsa, OK 74119
richard.hix@mcafeetaft.com
rachel.blue@mcafeetaft.com
sharolyn.ralston@mcafeetaft.com
Telephone: (918) 587-0000
Facsimile: (918) 599-9317

*Attorneys for The Outdoor Channel, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of March, 2011, I electronically transmitted the above and foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Sarah Jane Gillett
Robert Nelon

                                *s/Sharolyn C. Whiting-Ralston*
                                Sharolyn C. Whiting-Ralston