IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**THE OUTDOOR CHANNEL, INC.,**

    **Plaintiff,**

v.

**PERFORMANCE ONE MEDIA, LLC, d/b/a IN COUNTRY TELEVISION, a New York Limited Liability Company; and ROBERT J. SIGG, an individual,**

    **Defendants.**

Case No. 4:10-CV-00030-JHP-PJC

## DEFENDANTS' MOTION TO COMPEL AND BRIEF IN SUPPORT

Defendants Performance One Media, LLC, d/b/a In Country Television ("POM"), and Robert J. Sigg respectfully submit their motion pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii) requesting an order compelling plaintiff The Outdoor Channel, Inc. ("Outdoor") to provide full and complete interrogatory responses to the interrogatories served by POM and by Sigg.

## INTRODUCTION

On January 15, 2010, Outdoor filed this action, asserting a claim for trademark infringement and seeking injunctive relief and money damages. In sum, Outdoor appears to claim that:

(1) defendants' use of the phrase "Bringing the Outdoors Home" as a subsidiary part of In Country Television's ("ICTV") design mark infringed Outdoors' registered trademark, BRING THE OUTDOORS HOME;"

(2) a program carried on ICTV with the title "Wingshooting USA" infringes Outdoor's registered trademark THE WINGSHOOTER;

(3) a program carried on ICTV with the title "Arctic Cat Presents Outdoors TV" infringes the plaintiff's registered mark OUTDOOR CHANNEL or THE OUTDOOR CHANNEL; and

(4) design of ICTV's website violates Outdoors' trade dress rights in its own website design.

Outdoor has placed four marks at issue in this lawsuit: (a) the word mark THE OUTDOOR CHANNEL; (b) a design mark with the words OUTDOOR CHANNEL and corresponding design element; (c) the word mark BRING THE OUTDOORS HOME; and the word mark THE WINGSHOOTER. Accordingly, POM and Sigg served discovery requests seeking information and documents related to each of the marks Outdoor alleges defendants infringed. However, Outdoor has refused to respond to the interrogatories propounded by both POM and Sigg, contending that the interrogatories and their subparts exceed the limit imposed by Fed. R. Civ. P. 33(a) ("Rule 33(a)"). While declining to fully explain the logic, if any, behind how it counts subparts, Outdoor contends single interrogatories contain numerous discrete subparts, sometimes resulting in a single numbered interrogatory counting as 78 separate interrogatories. However, an application of relevant case law and an examination of the purpose behind the limit of Rule 33(a) suggests otherwise. This Court should find the interrogatories served by POM and by Sigg to be within the limit of Rule 33(a) and require Outdoor to respond fully to all interrogatories propounded by defendants.

## RELEVANT FACTS

1. On March 7, 2011, POM served its first set of interrogatories on Outdoor. *See* Ex. 1, Defendant Performance One Media's First Set of Interrogatories to Plaintiff. On the same date, Sigg also served his first set of interrogatories on Outdoor. *See* Ex. 2, Defendant Robert J. Sigg's First Set of Interrogatories to Plaintiff.

2. POM's first set of interrogatories contained 25 separately numbered interrogatories. *See* Ex. 1. Eight of these interrogatories were drafted using subparts. Subparts were utilized to either identify the level of detail that should be included in the response or to make the questions more comprehensible and organized. For example, where POM asked a *single* question about *each* of the marks at issue in this lawsuit, POM identified each mark in a separate subpart, making it easier for Outdoor to respond to the question and making it clear that the interrogatory covered all four marks at issue. *See, e.g.*, Ex. 1, Interrogatory No. 8.

3. Sigg's first set of interrogatories contained only ten separately numbered interrogatories. *See* Ex. 2. Three of Sigg's first interrogatories were drafted using subparts to make the questions more comprehensible and organized. Like POM, Sigg utilized a subpart where he asked a *single* question about each of the marks at issue in this lawsuit. Sigg also relied on subparts in his questions regarding Outdoor's storage of ESI and information technology systems. In these interrogatories, subparts were used to specify the type of information sought by the interrogatories. *See, e.g.*, Ex. 2, Interrogatory No. 8 (requesting that Outdoor Channel describe certain computers by identifying the type of computer, whether the computer has been reformatted, the location of the computer, etc.).

4. On April 5, 2011 — 29 days after defendants served their interrogatories and one day before Outdoor's responses were due — Outdoor notified defendants that it objected to the interrogatories served by both POM and by Sigg. *See* Ex. 3, April 5, 2011 letter from S. Whiting-Ralston to S. Gillett. Outdoor objected on the basis that the interrogatories sent by POM and sent by Sigg exceeded the maximum number permitted by Rule 33. As an example, Outdoor noted that "POM's Interrogatory No. 16 alone consists of 78 interrogatories and Interrogatory Nos. 8 through 14 have a combined total of 56 interrogatories." *See* Ex. 3.

5. Outdoor refused to answer *any* of the interrogatories posed by either POM or by Sigg. Outdoor requested defendants amend their interrogatories "to be consistent with the Federal Rules of Civil Procedure." *See* Ex. 3. On April 6, 2011, Outdoor filed a motion for protective order on this basis. (Dkt. No. 141). The Court denied Outdoor's motion for protective order on April 7, 2011, because Outdoor failed to comply with Local Civil Rule 37.1, which requires parties to meet and confer before filing any motions related to discovery. (Dkt. No. 142).

6. On April 12, 2011, counsel for both parties met for an in-person conference to discuss outstanding discovery issues, including Outdoor's objections to defendants' interrogatories. During the conference, counsel for defendants attempted to gain a better understanding of Outdoor's objection to the interrogatories. Outdoor was unable to provide a clear explanation for its calculation of subparts. For example, one member of Outdoor's legal team alleged that Interrogatory No. 8 contained 32 discrete subparts, while another member of the legal team said she counted only eight discrete subparts. At the meeting, defendants agreed to amend each set of interrogatories and serve the revised interrogatories by April 14, 2011. *See* Ex. 4, April 14, 2011 letter from S. Gillett to R. Hix; Ex. 5, Defendant Performance One Media's First Amended Set of Interrogatories to Plaintiff; Ex. 6, Defendant Robert J. Sigg's First Amended Set of Interrogatories to Plaintiff.

7. Defendants revised the interrogatories in accordance with the discussion during the meeting. For example, defendants excluded a group of interrogatories designed to elicit information regarding the identification of computers and storage locations for relevant electronically stored information which had been included in the interrogatories served on March 7, 2011. *See* Ex. 4. During the meet and confer on April 12, plaintiff's counsel indicated the likelihood that information about Outdoor's electronic systems could be provided informally

4

through a telephone conference with a knowledgeable information technology employee in lieu of formal discovery.

8. POM's first amended set of interrogatories contained 16 separately numbered interrogatories; none of which utilized any separately demarcated subparts. *See* Ex. 5. Sigg's first amended set of interrogatories contained nine separately numbered interrogatories. One of Sigg's amended interrogatories utilized subparts to enhance the interrogatory's clarity and organization. *See* Ex. 6.

9. The following day, on April 15, 2011, Outdoor refused to respond to defendants' amended interrogatories on the same basis as before. *See* Ex. 7, April 15, 2011 letter from S. Whiting-Ralston to S. Gillett. Outdoor also informed defendants that it was not willing to make an information technology employee available for an informal telephone conference.

10. Given Outdoor's refusal to provide information about its electronic systems and storage locations for relevant and responsive documents on a voluntary basis, defendants have prepared a second amended set of interrogatories for Sigg, adding back in the IT questions that were removed. That second amended set is attached hereto as Exhibit 8.

## ARGUMENT AND AUTHORITIES

### I. The interrogatories served by each defendant on Outdoor comply with the limit established by Rule 33(a).

Rule 33(a) permits "any party [to] serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts." The question as to what constitutes a "discrete subpart" for purposes of calculating subparts for the Rule 33(a) limit has been addressed by LCvR 33.1 in the Northern District of Oklahoma. LCvR 33.1 provides that "[i]nterrogatories inquiring as to the existence, location and custodian of documents or physical evidence shall be construed as one interrogatory. All other interrogatories, including

5

subdivisions of one numbered interrogatory, shall be construed as separate interrogatories." LCvR 33.1.  Based on the prior construction of the applicable Local Rule and on case law within the Tenth Circuit, it is clear that neither the interrogatories served by POM nor by Sigg on Outdoor exceed the limit established by Rule 33(a).

A decision several years ago from this Court is directly applicable to the instant situation. In *State ex rel. Edmonson v. Tyson Foods, Inc.*, the Court analyzed whether subparts of interrogatories should be counted as separate interrogatories.  No. 05-CV-329-GKF-SAJ, 2007 WL 649332, at *2-3 (N.D. Okla. Feb. 26, 2007).  The *Tyson Foods* court did not limit its analysis to merely an application of LCvR 33.1.  Instead, the *Tyson Foods* court considered the subject matter of the interrogatories in determining whether a subpart was discrete for purposes of totaling the number of interrogatories.

> The court once more finds itself spending judicial time counting interrogatories.  The court is presented with the grand etymological dispute of whether an inquiry into 'all actions taken' and 'practices employed by' is one question or two.  Are actions taken to 'manage, address, reduce and control' chemical compounds in the IRW separate actions such that Defendants have used up four of their sacred 25 permitted inquiries?

*Tyson Foods*, 2007 WL 649332, at *4-5.  After analyzing the subject matter of the defendants' interrogatories, the *Tyson Foods* court ultimately concluded that each individual defendant had served 25 or fewer interrogatories, and, therefore, discovery was proper under Rule 33(a).  The *Tyson Foods* court further noted that "quality, not quantity, [was] the guiding discovery light for the court and counsel.  Any interrogatory, the probative value of which outweighs the burden of production, that may lead to admissible evidence will be allowed whether within or without the numbered 25." *Id.* at *5.

By examining the subject matter of the interrogatories, the *Tyson Foods* court signaled its willingness to follow the approach used consistently by other courts in the Tenth Circuit when

6

counting interrogatory subparts for purposes of Rule 33(a). Federal district courts in Colorado, Kansas, Nevada, and Utah apply the "related question" test to determine whether a subpart of an interrogatory is discrete and, thus, counts as an additional interrogatory. *See, e.g.*, *Wildearth Guardians v. Pub. Serv. Co. of Colo.*, No.09-CV-01862-ZLW-MEH, 2010 WL 5464313, at *1-2 (D. Colo. Dec. 29, 2010); *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2008 WL 1924945 (D. Kan. Apr. 28, 2008); *Johnson v. Kraft Foods North America, Inc.*, No. 05-2093-JWL-DJW, 2006 WL 3143930 (D. Kan. Oct. 31, 2006); *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685-86 (D. Nev. 1997); *Flying J, Inc. v. TA Operating Corp.*, No. 1:06cv00030 TC, 2008 WL 4169818 (N.D. Utah Sept. 2, 2008). Under this test, the court considers whether a subpart is subsumed within or logically and necessarily related to the primary question. If so, the subpart should not be counted as an additional interrogatory and, instead, should be included within the overarching question. *Lowery v. County of Riley*, No. 04-3101-JTM-DWB, 2009 WL 648928, at *2 (D. Kan. Mar. 12, 2009). "[A]n interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question . . . . On the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the interrogatory." *Id.*

### A. The interrogatories propounded by POM and by Sigg elicit information related to a common theme.

Although Outdoor does not explicitly state as much in the communications attached as exhibits to this motion, Outdoor appears to base its objection primarily on those interrogatories which seek information regarding Outdoor's "intellectual property." The interrogatories define "your intellectual property" to include:

> all intellectual property (trademark, trade name, trade dress, or copyright) owned by you or in which you have any interest and that *you are claiming was damaged in this lawsuit.* The term includes the following marks indentified in your First Amended

7

> Complaint: (a) THE OUTDOOR CHANNEL; (b) OUTDOOR CHANNEL (wording and corresponding design element); (c) BRING THE OUTDOORS HOME; and (d) THE WINGSHOOTER.

Ex. 5, p. 2 (emphasis added). Thus, interrogatories which reference Outdoor's "intellectual property" seek information about each of the marks at issue in this lawsuit. During the meet and confer, defense counsel clarified that this definition is only intended to capture the marks pursuant to which Outdoor claims damage in this action. Subparts of such interrogatories should *not* be construed as discrete subparts merely because they reference four marks.

Outdoor takes the position that defendants may not permissibly ask a question regarding each of the four marks in a single interrogatory. Under Outdoor's theory, any interrogatory that relates to each of the four marks at issue in this lawsuit must automatically count as *at least* four interrogatories. Outdoor further claimed that defining a term (such as "intellectual property") to include all of the marks at issue in the lawsuit results in the same outcome, meaning each interrogatory would automatically count as four interrogatories.

Outdoor's position is illogical and unfounded. Under Outdoor's theory, if Outdoor's First Amended Complaint alleged that defendants infringed upon 32 of Outdoor's marks, defendants would not be permitted to ask a *single* question about *each* mark under the Federal Rules. Certainly, that cannot be the case. Instead, courts recognize the lack of sensibility in such a rigid approach:

> While this interrogatory could be construed as having three discrete subparts (i.e., (1) identify the element of each alleged design defect, (2) state how such element of design was defective, and (3) identify the manner in which each defect caused any alleged injuries), the fact that it seeks information about multiple alleged design defects does *not* turn it into multiple interrogatories. This interrogatory does not contain multiple subparts that discuss various, unrelated topics. Rather, it is one interrogatory directed at eliciting details concerning a *common theme.*

*Cardenas v. Dorel Juvenile Group, Inc.*, 231 F.R.D. 616, 619-20 (D. Kan. 2005). Even though the interrogatory at issue sought information related to separate (but related) design defects, the *Cardenas* court refused to count such interrogatory as more than one interrogatory.

This same approach — which was sanctioned in this District in the *Tyson Foods* case — should apply to the interrogatories at issue in this action. As discussed previously, the *Tyson Foods* court declined to count interrogatories for purposes of Rule 33(a) relying on a hypertechnical literal application of LCvR 33.1. *See Tyson Foods*, 2007 WL 649332, at *5-6. Instead, in harmony with the weight of authority from district courts within the Tenth Circuit, the *Tyson Foods* court focused on the subject matter of the interrogatories and whether the subjects addressed were interrelated or not. *Id.* Even though many of defendants' interrogatories here seek information related to each of the marks identified in Outdoor's First Amended Complaint, each interrogatory does *not* count as multiple interrogatories simply because it addresses the marks collectively and asks for information regarding each mark individually. For example, Interrogatory No. 6 in POM's amended interrogatories reads as follows: "Identify all persons involved in the creation, design, selection, and day-to-day use of your intellectual property, including but not limited to the persons who gave final approval for the use of the intellectual property, prior to the first use in interstate commerce." Ex. 5, p. 4. With this interrogatory, POM seeks identification of the individuals at Outdoor who may have knowledge of the marks relevant to Outdoor's claim or POM's defenses. The interrogatory necessarily asks Outdoor to identify the individuals involved with all four of the marks named in the First Amended Complaint. Even though the same individuals may not have knowledge of each of the marks, the interrogatory should not be construed as four interrogatories for purposes of Rule 33(a). If that

were the rule, then it would be impossible to serve an effective and comprehensive set of interrogatories in any case involving multiple defects, marks, injuries, contracts, etc.

In its April 15, 2011 letter, Outdoor alleged that "Siggs' [sic] Interrogatory No. 4 alone contains at least 78 different interrogatories." *See* Ex. 7. Outdoor failed to provide any mathematical or other basis by which it arrived at the total of 78 interrogatories. *Id.* Sigg's Interrogatory No. 4 asks Outdoor to:

> [s]tate whether you content that use of a trade name or trademark by any of the following entities would infringe upon any trademark or trade name owned by you; state whether and when you are or became aware of such use; and describe each and every action you have taken to protect your intellectual property rights (trademark, trade name, trade dress, or otherwise) from any alleged infringement . . . .

*See* Ex. 6. Interrogatory No. 4 then specifies the 26 entities to which the interrogatory applies. *Id.* Even assuming that Outdoor believed each entity should constitute a discrete subpart, such a contention would only result in a total of 26 discrete subparts, far less than Outdoor's claim of 78. Once again, Outdoor's position is both illogical and unfounded.

In *Flying J Inc. v. TA Operating Corporation*, No. 1:06CV00030 TC, 2008 WL 4169818 (N.D. Utah Sept. 2, 2008), the United States District Court for the Northern District of Utah considered whether an interrogatory requesting "a description of instances in which ten Pilot employees communicated with five Comdata employees about TCH, the TCH card, Flying J, Phil Adams (CEO of Flying J) or Irving Oil" contained discrete subparts for purposes of Rule 33(a). *Id.* at *4. The responding party claimed that interrogatory contained at least ten discrete subparts "because it inquires about instances in which ten separate individuals engaged in conversations with five separate individuals about five different subjects." *Id.* (internal quotation marks omitted). Based on this logic, the responding party in *Flying J* claimed this interrogatory

10

contained a whopping 250 discrete subparts. *Id.* The *Flying J* court refused to adopt the responding party's counting of subparts. Instead, the *Flying J* court found the interrogatory was

> more efficient and directed than a blanket request for all communications between anyone at Pilot and all other persons. Rather than impose a burden on Pilot, Plaintiffs narrow their request in a way that helps identify specific individuals and subjects, which advances the search for information. . . . Parties should be encouraged to be specific in discovery.

*Id.* Accordingly, the *Flying J* court ruled that the interrogatory at issue contained *no* discrete subparts and, therefore, counted only as a single interrogatory.

This Court should apply the *Flying J* court's logic when analyzing Sigg's Interrogatory No. 4 — which Outdoor claims should count as 78 separate interrogatories. Interrogatory No. 4 asks Outdoor whether the named entities have infringed upon any of Outdoor's marks. Sigg *could* have drafted a blanket request, inquiring as to whether Outdoor contends that *any* other entity has infringed upon any of Outdoor's marks and, if so, what Outdoor had done about it. But instead of presenting such a general request, Sigg narrowed his request to alleged infringement by *only* the 26 identified entities. Both POM and Sigg have drafted their interrogatories consciously, in an attempt to be as specific as possible, while still obtaining the information they need to defend against Outdoor's claims.

The method of counting interrogatories suggested by Outdoor is unreasonable and unsupported by the purpose of the Rule 33(a) limit. Recognizing that excessive interrogatories could be used to harass parties to litigation, the Advisory Committee sought to impose a limit on interrogatories "to reduce the frequency and increase the efficiency of interrogatory practice." Fed. R. Civ. P. 33(a), Notes of Advisory Committee on 1993 Amendments to Rules. But in imposing a limit of 25 interrogatories, the Advisory Committee specifically noted that "the aim [was] not to prevent needed discovery, but to provide judicial scrutiny before parties make

11

potentially excessive use of this discovery device." *Id.* Neither defendant seeks to harass Outdoor with the interrogatories. Instead, both POM and Sigg seek information relevant to the action and necessary for their defense. The defendants seek this information in the most efficient manner possible, which at times necessitates providing additional detail and specificity in the interrogatory itself. POM and Sigg have propounded the very type of written discovery envisioned by the Advisory Committee: neither Rule 33(a) nor N.D. LCvR. 33.1 should be interpreted to preclude this written discovery.

> **B.  Even if the Court concludes that either defendant has served more than 25 separate interrogatories, the Court should find the remaining interrogatories to be necessary under the circumstances of this case and require Outdoor to respond fully.**

While acknowledging the limitation imposed by Rule 33(a), the *Tyson Foods* court recognized the importance of discovery in a case, noting that the guiding light of discovery should be the quality of the interrogatories propounded, not the quantity. *Tyson Foods*, 2007 WL 649332, at *5. Under the *Tyson Foods* rationale, any relevant interrogatories should be permitted even if the number of interrogatories exceeds the limit imposed by Rule 33(a). *Id.* If this Court were to find that either POM or Sigg have served more than the 25 interrogatories allotted to each defendant, defendants respectfully request that the Court issue an order holding that any interrogatories which exceed that limit to be both relevant and necessary to this action and, accordingly, require Outdoor to respond to such additional discovery within a reasonable time frame.

## CONCLUSION

For the foregoing reasons, defendants respectfully request the Court order plaintiff to provide full and complete responses to the interrogatories served by POM and by Sigg, that are attached hereto as Exhibits 5 and 8

Respectfully submitted,

**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**

By: *s/Sarah Jane Gillett*

Sarah Jane Gillett, OBA #17099
320 South Boston Avenue, Suite 200
Tulsa, OK  74103-3706
Telephone:  (918) 594-0400
Facsimile:  (918) 594-0505
Email:  sgillett@hallestill.com

-and-

Robert D. Nelon, OBA #6610
Juliana P. Deligans, OBA #19792
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
Chase Tower, Suite 2900
100 North Broadway
Oklahoma City, OK  73102-8865
Telephone:  (405) 553-2828
Facsimile:  (405) 553-2855
Email:  bnelon@hallestill.com
Email:  jdeligans@hallestill.com

**ATTORNEYS FOR DEFENDANTS, PERFORMANCE ONE MEDIA, LLC, D/B/A IN COUNTRY TELEVISION, AND ROBERT J. SIGG**

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of May, 2011, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:

Rachel Blue    rachel.blue@mcafeetaft.com
Richard Parker Hix    richard.hix@mcafeetaft.com
Sharolyn Colleen Whiting-Ralston    sharolyn.ralston@mcafeetaft.com

                                                            s/ Sarah Jane Gillett_____

1230143.1:711028:01585